No. 6929.

OPHELIA G. BURBANK, TUTRIX, VS. WILLIAM HARRIS.

Where the former lessee of property is sued by his former lessor, for damages to the property alleged to have been caused by the fault of the defendant during the term of the lease, the defendant may contest the former lessor's title to the property; and to recover in such a suit, the plaintiff must prove that he was the owner of the property.

Where in an action for damages on account of injury done to certain property, the decree of this court merely declares that the defendant is responsible for certain damages, it does not amount to a judgment for the amount of those damages in favor of the plaintiff, who has neither alleged, nor proved that he was the owner of the injured property. In such case the defendant is entitled to allege, and to introduce any pertinent evidence to prove the nature, and limitations of the plaintiff's rights in the injured property; and in no event can he be held for a greater proportion of the damages than the nature and extent of the plaintiff's rights in the property would equitably entitle him to claim.

APPEAL from the Fourth Judicial District Court, parish of St. Charles. *Bérault*, judge *ad hoc*. Trial by jury.

*Fellowes & Mills* for plaintiff.

*Breaux, Fenner & Hall* and *J. D. Augustin* for defendant.

*Wm. Reed Mills* for Samuel Burbank, tutor.

The opinion of the court was delivered by

DEBLANC, J. In March 1865, the Fashion plantation, then belonging to Richard Taylor, was—by the decree of a Federal court, condemned as forfeited to the United States, under an act of Congress approved on the seventeenth of July 1862, and—on the twelfth of May 1865, sold under said decree and adjudicated to Daniel Christie for nine thousand dollars. That plantation measured over two thousand arpents of land, with a front on the Mississippi river: the buildings which were on the same at the date of said sale and up to the twenty-ninth of October 1872, had nearly all been erected prior to 1853, and—as many other estates located as this was, had been almost abandoned during the war.

On the tenth of October 1871—for the promised sum of two thousand dollars which was to be paid on the first of October 1872, Samuel N. Burbank, as under tutor of the minor children of Ophelia G. Burbank, leased the Fashion plantation to William Harris—the defendant—

for the space of one year, commencing on the first of January and ending on the thirty-first of December 1872.

Harris's rights, as a lessee, were limited by three clauses of the contract of the tenth of October 1871.

1. He was not to cut any wood or timber on said plantation, except that required for his own use and the use of his employees, in cultivating said plantation.

2. S. N. Burbank could—during the lease—remove any and all the machinery there was on the place.

3. He had also reserved the right to rent or sell, to the N. O. Mobile and Texas Railroad Company, a portion of the land not exceeding ten acres.

Less these three reservations, the lessee was fully authorized to enjoy the rented premises, according to the use for which it was intended by the lease, and that was to cultivate rice.

On the twenty-ninth of October 1872, a portion of the buildings on the place so leased was destroyed by fire, and—on the twelfth of March 1873, plaintiff—as natural tutrix of her children—brought this suit to recover against Harris the sum of eight thousand dollars, on the ground that it was through his illegal, improvident and careless acts that said buildings and the machinery therein contained had been destroyed and damaged.

On the first trial of this case in the lower court, judgment was rendered in favor of defendant, and—from that judgment—plaintiff appealed.

The decision of the Supreme Court on the first appeal is in these words: "It is, therefore, ordered, adjudged and decreed that the judgment of the district court be avoided, annulled and reversed, and that this case be remanded to be proceeded in according to law, and in accordance *with the views herein expressed*."

What views are so referred to? We transcribe, from the decision, those which we consider as manifestly linked to, inseparable from and forming a part of the decree; they are expressed in the last paragraph of the opinion of the appellate court: "The damages which we think Harris responsible for are the value of the cane-shed, the damage done to the sugar-house, the contents therein and the engine, and to any other building, caused by the fire."

On the second trial in the lower court, after the case had been remanded, a verdict for $500 was returned in favor of plaintiff. From the judgment based on said verdict plaintiffs have appealed and defendant has joined in the appeal.

This suit—as we have already said—was brought by Ophelia G. Burbank, in no other capacity but as natural tutrix of her minor children, and—as such—what does she claim?

Burbank vs. Harris.

1. Damages alleged to have been suffered by the destruction of buildings and machinery attached to the Fashion plantation, leased to Harris—and neither in the pleadings, nor in the act of lease, have we found even the naked averment that said plantation belongs to the children in whose name this suit was brought.

2. Damages for the loss of scales, wagons, carts and lumber belonging to petitioner—that is to Ophelia G. Burbank, and which—it is charged—was illegally taken, carried away and used by Harris.

Ophelia Burbank died after the institution of this suit, which is now prosecuted by Samuel N. Burbank, as tutor of the children of said deceased.

As lessee, Harris has complied with at least two of the obligations of his contract: he has paid the price agreed upon and returned the plantation. As lessee, and as concerns any conventional obligation between him and plaintiff, he is no longer liable. Is he otherwise liable? If so, to whom and for what amount? He is liable; but, when in March 1873, this action was filed against him, he had ceased to be a lessee. Under these circumstances, can plaintiff successfully invoke against him the indisputable doctrine that a tenant can not contest his lessor's title, that the former's possession is that of the latter? We believe not.

Were Harris sued for the rent or possession of the place, he would not be allowed to avoid the payment of the rent, or refuse delivery of the place, on the ground that those from whom he leased are not the owners of the leased property—and why? Because—as is specially provided in our Code and as was so often decided by this court, the lessee holds from and for the lessor, and because ownership is not essential to the validity of a lease, for one who lets out the property of another, warrants its enjoyment against the claim of the owner, and whilst the lessee retains the undisturbed possession of the premises, he can not enquire into his lessor's title.

Rev. C. C. 2682. 17 A. 153.

It is different, however, when—after the expiration of the lease, when after the relation of lessee and lessor has ceased to exist, the party who once was a lessor, claims from one who once was a lessee, the value of property destroyed or injured during the lease, through the alleged negligence and carelessness of the former lessee. In such a case, against that former lessee, as against a mere trespasser, the claimant—in order to recover—must show a *prima facie* title.

19 L. R. 397. 5 R. R. 510.

Here, as they did in the lower court, plaintiffs contend that the judgment heretofore rendered by this court is final as to defendant's liability for damages, and that this case was remanded to the district court for the exclusive purpose of ascertaining the amount of the

incurred damages. The judgment referred to does declare that defendant is liable for the destruction of the buildings and their contents, and for the injury done to the machinery. After that declaration by the court, it pronounced the reversal of the judgment appealed from, and remanded the case to be tried according to law and in accordance *with the views* expressed in its opinion. Every line, every word of a decree has a legal value, and the decree already mentioned, when compared and applied to the declaration that defendant is liable for the damages sustained, closes the door as to any enquiry relating to the already determined liability.

"Il ne faut pas confondre la certitude de l'objet qui fait le sujet de la condamnation avec sa liquidité. Pour ne pas être liquide, la chose peut n'en être pas moins certaine, et il suffit—pour que le jugement fasse en force de chose jugée, qu'elle soit susceptible d'une liquidation ultérieure: Tel est le jugement qui, sans en contenir la liquidation—condamne à des restitutions ou à des dommages et intérêts qui doivent être plus tard liquidés."

Larombière, vol. 5, p. 214.

"Mais le jugement passe en force de chose jugée, si l'objet de la condamnation est expliqué et déterminé avec certitude par quelque act auquel le dépositif se réfère. Il y a donc chose jugée, lorsque le jugement condamne à payer les causes de la demande, en ce qui a été demandé par l'acte introductif d'instance, bien qu'il n'exprime point précisement la montant de la condamnation."

Larombière, vol. 5, p. 214.

Defendant is not condemned, by the decree of this court, to pay a specified amount of damages, but that he is liable to some one for damages which resulted from the destruction of buildings on the Fashion plantation, is a fact passed upon and determined by the aforesaid decree, and that judicially ascertained and published fact constitutes a judicial verity which can no longer be contested by any of the parties to this litigation. Of itself, that fact did not justify a verdict in favor of plaintiffs, as it is not alleged, nor does it appear that they are the owners of the property destroyed by fire on the twenty-ninth of October 1872.

Though in neither the pleadings nor the lease, plaintiffs are alleged to be, or recognized as the owners of said property, it may be that, on the first trial, they have established that fact, to the satisfaction of the jury and of the district and appellate court, but this they may have thought useless to do and did not do on the second trial, and we can not supply both the omitted averment and the omitted proof of plaintiff's title.

Defendant attempted to show the character and extent of any title which plaintiffs may have acquired to the Fashion plantation, and—for

Burbank vs. Harris.

that purpose—offered to introduce the pleadings and judgment of condemnation of said plantation to the United States. The evidence so tendered was excluded by the court. In this, there was error—for, of the plantation thus condemned, all that could be acquired or sold, was Richard Taylor's right in and to the same, and the right so acquired is a limited one, which terminates with the life of the party, for whose acts the property was seized. 9 Wallace 350. 18 Wallace 160.

If—as seems probable—the Fashion plantation has passed to plaintiffs, they hold it subject to the rights which existed thereon at the date of its condemnation, unless those rights have been relinquished or lost —18 Wallace 156—and subject also to the now suspended title of the legal representatives of Richard Taylor to said plantation. It is evident, then, that the damages sustained must be measured—not to any absolute title, not to any unconditional ownership, but to the uncertain duration of plaintiff's possession.

This is a difficult task, and—with the too incomplete information imparted by the record—it is a task which can not now be accomplished. To undertake and perform it, jurors and judges shall have to be guided by the light of statistics and presumptions, to learn what is the General's age, his health, his constitution, his habits, his infirmities, count the days he has lived, and with the assistance of those who have calculated the chances of life and death, guess how near he may be from the inevitable grave. This done, to then determine and fix—by the presumed proportion of what remains of that life, the presumed proportions of plaintiff's possession, and the benefit which — in that uncertain space of time, they might have realized from the possession of which they have been deprived. To reach any reasonable conclusion, jurors and judge will have to also consider whether it is probable that those who possess under such a title, would have been disposed to make to the destroyed buildings and before their destruction, the repairs which they needed, and how long—without those repairs—the buildings would have been in a condition to be used with advantage by any one, proprietor or tenant.

In the interest of the parties, we are compelled to remand this cause, with instructions to the lower court to admit the evidence of the origin and character of the title which may be held by the plaintiff, and —besides—any evidence tending to establish the nature, duration and value of the possession of the destroyed property.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from is avoided and reversed—the verdict on which it is based annulled and set aside, and this case remanded to be proceeded in according to law and the views expressed in our opinion: the costs of the appeal to be paid by plaintiffs.